UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Luis Francisco Mira Castro,<br><br>           Petitioner,<br><br>    -v-<br><br>Kristi Noem, Secretary of the Department of Homeland Security; Officer Montgomery,<br><br>           Respondents. | 2:26-cv-696<br>(NJC) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

On February 7, 2026, Luis Francisco Mira Castro filed this Petition seeking a writ of habeas corpus under 28 U.S.C. § 2241 to challenge the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). (Petition for Writ of Habeas Corpus, ECF No. 1.) The Petition argues that the detention is unlawful for four reasons: (1) Mr. Mira Castro's detention without due process violates his status as a special immigrant juvenile; (2) ICE's arrest of Mr. Mira Castro on February 6, 2026 was made without probable cause to believe that he is a noncitizen that presents a flight risk as required by 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii); (3) ICE's detention of Mr. Mira Castro without notice and opportunity to be heard violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution;[1] and (4) Mr. Mira Castro is not subject to mandatory detention under 8 U.S.C. § 1225. The Petition seeks

---

[1] While the Petition generally invokes the right to due process without specifying whether the right emanates from the Fifth or Fourteenth Amendments, the Court understands the Petition to bring a Fifth Amendment due process claim because it names federal Respondents and challenges Mr. Mira Castro's detention by ICE.

a writ of habeas corpus that stays any transfer of Mr. Mira Castro outside of the Eastern District of New York, stays his removal, and requires Respondents to immediately release Mr. Mohd on his own recognizance. (Pet. at 3.)[2] For the reasons explained below, the Petition is GRANTED.

Respondents are federal government officials named in their official capacities: (1) Kristi Noem, in her official capacity as Secretary, U.S. Department of Homeland Security ("DHS"); and (2) an ICE Officer by the name of "Officer Montgomery" for whom the Petition provides an address but no further identifying information.[3]

In a letter filed in lieu of a formal brief on February 9, 2026, Respondents acknowledge four prior cases by the undersigned granting habeas relief in similar circumstances, including *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065 (E.D.N.Y.). Respondents acknowledge that although they "respectfully disagree[]" with those cases, "the decisions would control the result in this case if the Court adheres to those decisions, as the facts of this case are materially indistinguishable from those in *Rodriguez-Acurio*." (Resp. to Order to Show Cause ("Resp.") at

---

[2] The Court has effectively granted the requested relief of a stay of any transfer of Mr. Mira Castro outside the Eastern District of New York through the issuance of a February 8, 2026 Stay of Removal and Order to Show Cause, which prohibits Respondents from transferring Mr. Mira Castro outside of the Eastern District of New York, Southern District of New York, and District of New Jersey. (ECF No. 4.) The Petition's request for a stay of removal does not make clear whether the requested stay would last for the duration of this this litigation or a longer period of time. In the event that it is the former, the Court has provided this requested relief through the Stay of Removal and Order to Show Cause, which prohibits Respondents from removing Mr. Mira Castro from the United States pending the resolution of this action.

[3] The Petition does not explain Officer Montgomery's connection to this action, including whether he is employed at the Nassau County Correctional Center ("Nassau County Jail"), where Mr. Mira Castro is detained, or whether he was involved in Mr. Mira Castro's arrest. (*See* Resp. to Order to Show Cause ("Resp."), ECF No. 6 (representing that Mr. Mira Castro is currently detained at the Nassau County Jail and has not at any time been detained at 535 Federal Plaza, Central Islip, NY (the "Central Islip Hold Room"); *cf.* Pet. ¶ 1 (asserting that Mr. Mira Castro is detained at an ICE "facility in Central Islip")).)

2, ECF No. 6.)[4] Although Respondents do not expressly do so here, the Court recognizes that in several other cases before the undersigned, Respondents have incorporated by reference the arguments they made to this Court in *Rodriguez-Acurio*, No. 25-cv-6065 (E.D.N.Y.), ECF No. 21. (Resp. at 2.) The Court assumes Respondents to do the same here as they invoke a handful of cases in which the respondents made arguments that this Court rejected in *Rodriguez-Acurio*. (*See* Resp. at 2 (collecting cases).)

Respondents argue that ICE's detention of Mr. Mira Castro falls under 8 U.S.C. § 1225(b)(2) ("Section 1225(b)(2)"), which governs the mandatory detention of certain noncitizens who are "seeking admission" to the United States. (Resp. at 1–2.) The Court understands Respondents' position to be that Section 1225(b)(2) requires Mr. Mira Castro's detention, and he has no right to any additional process under the Due Process Clause. Respondents' interpretation of Section 1225(b)(2) is that any noncitizen who entered the United States without authorization at any time is subject to detention, notwithstanding the fact that they have been residing in the interior of the country for months, if not years.

Respondents are incorrect for the reasons explained by this Court in *Rodriguez-Acurio v. Almodovar*, __ F. Supp. 3d __, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025),

---

[4] To the contrary, the facts of this case are not actually "materially indistinguishable" from those in *Rodriguez-Acurio*. In *Rodriguez-Acurio*, the petitioner was issued a Notice and Order of Expedited Removal in 2021 but was subsequently granted humanitarian parole pursuant to 8 U.S.C. § 1225(b)(2)(A). No. 25-cv-6065, 2025 WL 3314420, at *3–4 (E.D.N.Y. Nov. 28, 2025), *appeal docketed*, No. 26-219 (2d. Cir. Feb. 2, 2026). As a result, in that case, the Court considered whether the petitioner was subject to detention under 8 U.S.C. § 1225(b)(1), the expedited removal statute. *Id.* at *14–22. Here, nothing in the record shows that Mr. Mira Castro was ever placed in expedited removal proceedings, and Respondents represent that the "statutory basis for detaining [Mr. Mira Castro] is 8 U.S.C. § 1225(b)(2)(A)." (Resp. at 1.)

3

*appeal docketed*, No. 26-219 (2d. Cir. Feb. 2, 2026), and that decision is incorporated by reference in its entirety in this Order.

Detention under Section 1225(b)(2) only applies to noncitizens who, among other things, are "seeking admission" to the United States. *Id*. at *22. Here, Mr. Mira Castro is not "seeking admission" because he clearly is not presenting himself at the border and was not recently apprehended just after entering this country. Rather, at the time that ICE detained him, Mr. Mira Castro had been living in the interior of the United States since around the start of 2022, had been approved for special immigrant juvenile status, and had obtained an order of guardianship from the Nassau County Family Court, with special findings that it would not be in Mr. Mira Castro's best interests to return to his home country of El Salvador. (Pet ¶¶ 7–9.) Mr. Mira Castro had also received authorization to work in the United States from April 16, 2024 to April 27, 2027, and pursuant to that work authorization, Mr. Mira Castro is employed as a landscaper. (Pet. ¶¶ 11, 17.) He also lives with relatives and has a brother who is a U.S. citizen and a cousin who is a lawful permanent resident. (*Id.*)

Respondents offer no new arguments to support their position that *any* non-citizen apprehended in the interior of the United States is subject to mandatory detention under Section 1225(b)(2). (*See* Resp. at 1–2.) Nor do they submit any factual information aside from a Notice to Appear and a Warrant of Arrest. (*See* ECF No. 6-1.) The vast majority of courts throughout this District, Circuit, and even the country have rejected Respondents' expansive interpretation of Section 1225(b)(2). *See Barco Mercado v. Francis*, __ F. Supp. 3d __, No. 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("[T]he administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been

4

challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.").

The Second Circuit has not addressed whether Section 1225(b)(2) requires the detention of any non-citizen encountered by ICE in the interior of the United States, although several cases raising this issue are on appeal.[5] The Seventh Circuit recently suggested that Section 1225(b)(2) does not apply to noncitizens who are already residing in the United States. *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).[6] The Fifth Circuit recently reached the opposite conclusion. *Buenrostro-Mendez v. Bondi*, __ F. Supp. 3d __, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

This Court has conducted its own careful assessment of the law and the facts. In the absence of Second Circuit precedent to the contrary, this Court continues to conclude, as set forth in detail in *Rodriguez-Acurio*, that Respondents' position that Section 1225(b)(2) requires the detention of a non-citizen apprehended in the interior of the United States notwithstanding

---

[5] *See, e.g.*, *Cunha v. Moniz*, 6:25-cv-6532 (W.D.N.Y. Nov. 25, 2025), *appeal docketed,* No. 25-3141 (2d. Cir. Dec. 12, 2025); *Chen v. Almodovar*, 1:25-cv-8350 (S.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3169 (2d. Cir. Dec. 17, 2025); *Candido v. Bondi*, No. 1:25-cv-867 (W.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3159 (2d. Cir. Dec. 17, 2025).

[6] In *Castanon-Nava*, the Seventh Circuit reasoned:

> [T]he mandatory detention provision upon which Defendants rely, limits its scope to an "applicant for admission" who is "seeking admission," § 1225(b)(2)(A). Put another way, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)."

161 F.4th at 1061 (emphasis in original, quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)).

the fact that the non-citizen has continuously resided in this country for months, if not years, is unsupported by the statutory text.

Moreover, nothing in the record shows that ICE arrested and detained Mr. Mira Castro under Section 1225(b)(2) rather than Section 1226(a). (*See* ECF No 6-1 at 5.)

Accordingly, ICE's detention of Mr. Mira Castro is governed by the discretionary detention framework set forth in a different provision of the Immigration and Nationality Act, 8 U.S.C. § 1226(a). For the reasons explained in *Rodriguez-Acurio*, which are incorporated by reference here, Mr. Mira Castro has a liberty interest in being free from detention that is afforded procedural due process protection, notwithstanding Respondents' invocation of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), and other cases. Resp. at 2; *see also Rodriguez-Acurio*, 2025 WL 3314420, at *25–27 (finding that petitioner's situation is distinguishable from *Thuraissigiam* and that petitioner has a liberty interest that is afforded procedural due process protection).[7] ICE's detention of Mr. Mira Castro without notice and opportunity to be heard infringes on that liberty interest and triggers the right to procedural due process.

The balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), applies to procedural due process claims and requires this Court to consider: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Applying this

---

[7] Although the Respondents do not discuss *Thuraissigiam* in any way, because Respondents relied on this decision in opposition to the petition in *Rodriguez-Acurio*, this Court assumes Respondents seek to rely on it here.

balancing test, Respondents' detention of Mr. Mira Castro since February 6, 2026 violates his Fifth Amendment rights to procedural due process for the same reasons as those set forth in *Rodriguez-Acurio*.

Here, ICE's detention of Mr. Mira Castro without any notice or opportunity to be heard infringes on "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Moreover, there is a high risk of erroneous deprivation through the procedures used to detain Mr. Mira Castro because Respondents failed to provide *any* notice or any opportunity to be heard before a Department of Homeland Security officer or immigration judge before ICE detained him on February 6, 2026. Finally, Respondents fail to address any of the *Matthews v. Eldridge* factors, much less any government interests advanced by ICE's detention of Mr. Mira Castro without notice or an opportunity to be heard. Although the Attorney General may have a legitimate government interest in ensuring the appearance of noncitizens at immigration proceedings and preventing danger to the community, there is absolutely nothing in the record showing that Mr. Mira Castro presents a flight risk or danger to the community. Indeed, Mr. Mira Castro has no criminal record whatsoever. He has strong community ties in the United States and has been working with authorization from the U.S. government and complying with the requirements of his immigration status. (*See* Pet. ¶¶ 7–17.)

Not only does Mr. Mira Castro pose no safety or flight risk, but nothing in the record suggests that a DHS officer made *any* individualized determination that Mr. Mira Castro presented a danger or flight risk prior to ICE's arrest and detention of him on February 6, 2026. According to Mr. Mira Castro's verified Petition, "[o]n February 6, 2026, around 11:30 am, [he] was driving to lunch when he was stopped by ICE or by a bounty hunger working for ICE." (Pet.

¶ 12.) The arresting officer falsely asserted that Mr. Mira Castro's work authorization was invalid and thereafter arrested him without a warrant and detained him. (*Id.*) Respondents have not contested these facts or provided any evidence to contradict them.[8] Moreover, the face of the Form I-200 Warrant plainly identifies "East Meadow, New York"—the location of the Nassau County Jail, where ICE first transported Mr. Mira Castro *after* his arrest—as the location where ICE served the warrant on Mr. Mira Castro, not Uniondale, New York, where ICE officers arrested him. (Pet. ¶ 14; ECF No. 6-1 at 5.)

Accordingly, weighing all of the *Mathews v. Eldridge* factors—the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to demonstrate that Mr. Mira Castro's detention was required to advance any legitimate government interest in preventing danger to the community or ensuring appearance at removal proceedings—Respondents' detention of Mr. Mira Castro with no notice or opportunity to be heard violates his Fifth Amendment rights to procedural due process. Thus, ICE's detention of Mr. Mira Castro was unlawful from its inception, notwithstanding Respondents' efforts at post-hoc rationalization based on its expansive interpretation of Section 1225(b)(2).[9] *See* ECF No. 6-1 at 5

---

[8] Indeed, the Respondents submit only the Notice to Appear and Warrant of Arrest, neither of which contest these facts.

[9] Although Respondents do not explicitly invoke 8 U.S.C. § 1225(b)(1) as the basis for ICE's detention of Mr. Mira Castro, that provision is plainly inapplicable to him. Mr. Mira Castro is not subject to mandatory detention pending expedited removal as an "arriving alien" under Section 1225(b)(1)(A)(i). *See Rodriguez-Acurio*, 2025 WL 3314420, at *19. Nor do Respondents even argue, much less show, that he falls within any category of non-citizens who are designated by the Attorney General or their delegate as eligible for mandatory detention pending expedited removal under the statute's Designation Provision, 8 U.S.C § 1225(b)(1)(A)(iii). *See id*. at *15. Accordingly, ICE's detention of Mr. Mira Castro since February 6, 2026, is pursuant to the discretionary detention scheme of Section 1226(a), not the mandatory detention scheme of either Section 1225(b)(2) or Section 1225(b)(1).

(reflecting that the administrative warrant used to arrest Mr. Mira Castro was issued pursuant to "sections 236 and 287 of the Immigration and Nationality Act and part 287 title 8, Code of Federal Regulations," which correspond to 8 U.S.C. §§ 1226 and 1357 and 8 C.F.R. §§ 287.1–287.12, not 8 U.S.C. § 1225(b)(2)); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025); *see also Yao v. Almodovar*, No. 25-cv-9982, 2025 WL 3653433, at *4 (S.D.N.Y. Dec. 17, 2025) (discrediting respondents' post-hoc justification for petitioner's detention and finding that "ICE is properly held to its representation, *when it detained* [petitioner], as to the legal basis for that action" (emphasis added)); *see Rueda Torres v. Francis*, No. 25-cv-8408, 2025 WL 3168759 (S.D.N.Y., 2025 Nov. 13, 2025) (slip copy) (same).

Upon finding a constitutional violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice require." 28 U.S.C §§ 2241(a), 2243. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). In *Rodriguez-Acurio*, this Court provided the legal basis for ordering release from ICE detention as well as limited injunctive relief enjoining Respondents from invoking Section 1225(b) as the basis for subjecting a non-citizen habeas petitioner to mandatory detention, absent a change in relevant circumstances. *See Rodriguez-Acurio*, 2025 WL 3314420, at *31–32.

For those same reasons, in this action, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, necessitates both the immediate release of Mr. Mira Castro from ICE custody and narrow injunctive relief guarding against re-detention in violation of this Court's determination that Mr. Mira Castro is not subject to mandatory detention under Section 1225(b). As in *Rodriguez-Acurio*, the limited grant of injunctive relief to guard against re-detention by ICE without a bond hearing on the basis of Section 1225(b)(2) absent a change in relevant

9

circumstances falls within the "core of habeas," *Thuraissigiam*, 591 U.S. at 119, because it is necessary to ensure that the release of Mr. Mira Castro is not rendered meaningless.

## CONCLUSION

Accordingly, for all of these reasons explained in this Memorandum and Order and those set forth in *Rodriguez-Acurio*, the Petition is granted. Respondents must coordinate with Petitioner's counsel and thereafter release Petitioner into the physical care of his counsel, or another mutually agreed upon person at the earliest possible time agreed upon by the parties, but no later than 11:59 p.m., tonight, February 10, 2026. Respondents shall confirm compliance with these directives, including by identifying the individual to whom Petitioner was released, in a filing on the docket by noon on February 11, 2026. Additionally, pending the issuance of any final removal order against Mr. Mira Castro, Respondents are enjoined from denying Mr. Mira Castro bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances consistent with this Order.

The Court concludes that the other arguments set forth in the Petition for granting Mr. Mria Castro the requested relief, including arguments that ICE lacked legal authority to arrest him because it did not have "probable cause to believe he is an alien" or that he is a flight risk are now moot and unnecessary to resolve. (Pet. ¶ 12.)

The Show Cause hearing scheduled for February 11, 2026 at 2:00 p.m. in the Alfonse D'Amato U.S. Courthouse is therefore adjourned. The matter is held in abeyance.

Dated: Central Islip, New York
       February 10, 2026

                                              */s/ Nusrat J. Choudhury*
                                              NUSRAT J. CHOUDHURY
                                              United States District Judge